JUDGE KATHLEEN CARDONE

FILED

2023 JAN -3 PM 3: 24

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| ERIK SALAIZ, | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| BEYOND FINANCE, LLC, a California | § |
| Limited Liability Company | § |
| | § |
| **Defendants.** | § |
| | § |

# EP 23 CV 0006

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.   Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of

Texas and was present in the Western District of Texas during all calls at issue in this case.

2.   Defendant BEYOND FINANCE, LLC ("BF" "Defendant") is a limited liability company

existing under the laws of California with its principal address at 7322 Southwest Freeway, Suite

1200, Houston, Texas and is a foreign registered corporation in Texas and can be served via

registered agent C T Corporation System at 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

### NATURE OF ACTION

3.   As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am.

Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers/agents

placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

5.      As part of marketing their services, Defendant BF hired and authorized telemarketers to

place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone

dialing system ("ATDS").

6.      Plaintiff never consented to receive any of these phone calls, which were placed to him

for telemarketing purposes.

## JURISDICTION AND VENUE:

7.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.      This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising

under Texas Business and Commerce Code 305.053 because that claim arises from the same

nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little

complexity to the case, so it is unlikely to predominate over the TCPA claims.

9.      This Court has personal jurisdiction over the Defendant because they conduct business in

this District and in the State of Texas and because the events giving rise to this lawsuit occurred

in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant

regularly conducts business in the State of Texas and in this District, and because the wrongful

conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any goods or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held

vicariously liable under federal common law principles of agency for violations of either section

227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.     Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23.     Plaintiff successfully registered his personal cell phone (XXX) XXX-0898 on the National Do-Not-Call Registry August 19, 2021, which was more than 31 days prior to receiving the alleged calls.

24.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25.     Defendant BF offers debt relief services to consumers.

26.     As part of their marketing, Defendants BF hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an automatic telephone dialing system ("ATDS") to solicit their "debt relief" services.

27.     Defendant BF approves of the contracts with these telemarketers.

28.     Defendant BF authorizes the payments to the telemarketers.

29.     Defendants BF pays the telemarketers out of bank accounts they own and control.

30.     Defendant BF are well aware that the unauthorized phone calls being made on their behalf soliciting their "debt relief" services violate the TCPA.

31.     Defendant BF knowingly and willfully violates the TCPA because doing so benefits them financially when consumers enroll into their "debt relief" services.

32.     Defendant BF has been sued prior to this lawsuit for violating the TCPA Jones v. Accredited Debt Relief, LLC et al, No. 3:19-cv-02144-GPC-MDD (S.D.CA., Nov. 07, 2019) and continue their illegal behavior because violating the TCPA benefits Defendant BF financially.

33.     Plaintiff received at least thirteen (13) unauthorized phone calls to his personal cell phone 0898 from telemarketers calling on behalf of Defendant BF soliciting their "debt relief" services within a twelve-month period ("the calls"). *See Exhibit A.*

34.     The calls were made using an ATDS that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

35.     The calls all started with a 3-4 second delay of dead air followed by an audible beep (indicating the calls were made using an ATDS) before connecting Plaintiff to Defendant BF's telemarketers.

36.     Plaintiff has never had any relationship with Defendant and never knew who Defendant BF was prior to receiving the calls.

37.     Upon information and belief Plaintiff has received additional calls within the past two years from telemarketers calling on behalf of Defendant BF soliciting debt relief services that are unknown to Plaintiff at this time but will be revealed during discovery.

38.     Defendant BF's telemarketers called and harassed Plaintiff soliciting debt relief services at least twelve times before Plaintiff was able to identify Defendant BF's  true identity.

39.     On August 19, 2022, Plaintiff received one of multiple calls from a telemarketer calling on behalf of Defendant BF from phone number (915) 295-5943.

40.     Plaintiff answered and there was a 3-4 second delay of dead air followed by an audible beep (indicating the call was made using an ATDS) before being connected to a female telemarketer.

6

41.    The female telemarketer falsely identified herself and advised Plaintiff she was calling from "American debt relief."

42.    Defendant BF instructs their telemarketers to say their calling from "American debt relief" in order to hide their true identity and duck liability for violating the TCPA.

43.    The female telemarketer advised Plaintiff he was pre-qualified for their debt relief program.

44.    Plaintiff was extremely annoyed and aggravated for continuing to receive calls from telemarketers saying there from "American debt relief" soliciting debt relief services and advised the female telemarketer he was interested in the "debt relief program" for the sole purpose of identifying the company responsible for the calls.

45.    The female telemarketer collected Plaintiff's credit card debt, personal loan debt, monthly income, and personal information and solicited Plaintiff for debt relief services on behalf of Defendant BF.

46.    The female telemarketer then advised she was going to transfer Plaintiff to her "loan specialist."

47.    Plaintiff was then transferred to a representative from Defendant BF named LoJuan Wilson.

48.    LoJuan accepted the call from the female telemarketer confirming that Defendant BF hires and authorizes telemarketers to make unauthorized phone calls to consumers soliciting debt relief services on their behalf.

49.    LoJuan advised Plaintiff Defendant BF will consolidate all of Plaintiff's personal debt into one low monthly payment Plaintiff will make to Defendant BF.

50.     LoJuan confirmed Plaintiff's personal debt amount and solicited Plaintiff for a debt consolidation program on behalf of Defendant BF.

51.     LoJuan advised Plaintiff he would stop paying his creditors directly and let Defendant BF take over.

52.     If Plaintiff would have enrolled into the debt consolidation program from Defendant BF, it would benefit Defendant BF financially.

53.     Plaintiff received two emails from Lojuan from lwilson@beyondfinance.com which revealed the true identity of the company responsible for the calls. *ee Exhibit B.*

54.     Plaintiff advised Lojuan he would call him back if he wanted to proceed with the program.

55.     Defendant's telemarketers spoofed the caller ID numbers on thirteen (13) occasions when calling Plaintiff to a (915) area code to trick Plaintiff into thinking the calls were local.

56.     Table A below summarizes the phone calls Plaintiff received on behalf of Defendant BF:

Table A

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 04/22/2022 | 2:04 PM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 2 | 05/09/2022 | 4:38 PM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 3 | 05/10/2022 | 11:57 AM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 4 | 05/10/2022 | 01:27 PM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 5 | 05/11/2022 | 12:11 PM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 6 | 05/12/2022 | 11:24 AM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 7 | 05/18/2022 | 9:41 AM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 8 | 05/18/2022 | 1:18 PM | 915-295-5943 | Telemarketer calling from American debt relief. |

| 9  | 05/19/2022 | 11:05 AM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 10 | 05/20/2022 | 11:27 AM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 11 | 07/07/2022 | 11:15 AM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 12 | 08/19/2022 | 09:54 AM | 915-295-5943 | Telemarketer calling from American debt relief. |
| 13 | 08/19/2022 | 4:49 PM | 915-295-5943 | Telemarketer calling from American debt relief. Transferred to LoJuan Wilson from BF. LoJuan emailed his information. |

57.     Defendant employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

58.     Defendant's telemarketers, representatives, and their co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then place phone calls using an ATDS *en masse* to market debt relief services on behalf of Defendant BF.

59.     Defendant BF has knowledge of and has adopted and maintained TCPA violations as a sales strategy. Defendant BF knew full well that their telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant BF. Defendant BF willfully accepts these referrals and compensate their telemarketers for their illegal phone calls.

60.     Defendant BF refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant BF financially.

61.     Defendant BF is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") does not contain neither Defendant BF's registration.

62.     Defendant BF does not qualify for an exemption under § 302.053.

63.     No emergency necessitated none of the alleged phone calls.

64.     Plaintiff sent an internal do-not-call policy request to Defendant BF to email info@beyondfinance.com on December 31, 2022, which is an email listed on the website they own and control https://www.info@beyondfinance.com.

65.     Defendant BF never sent Plaintiff their internal do-not-call policy.

66.     Upon information and belief, Defendant did not train their telemarketers/representatives who engaged in telemarketing on the existence and use of Defendant BF's internal do not call policy as they failed to recognize Plaintiff's personal cell phone 0898 is registered on the National Do-Not-Call Registry.

67.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT BF

68.     Defendant is vicariously liable for the telemarketing calls that generated the lead on their behalf.

69.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

70.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

71.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

72.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

73.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

74.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

75.    To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

76.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

77.    Defendant is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

78.    Defendant knowingly and actively accepted business that originated through illegal telemarketing.

79.    Defendant knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

80.    By hiring a company to make calls on its behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

81.    Moreover, Defendant maintained interim control over the actions of its telemarketers.

82.    For example, Defendant had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

83.    Furthermore, Defendant had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

84.    Defendant also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

85.    Defendants donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched Defendant's debt relief services in the abstract.

86.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

87.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

88.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

89.    Defendants' telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendants. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

90.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.*

at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

91.     Defendant is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for debt relief services on behalf of Defendant.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

92.     The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

93.     The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

94.     The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

95.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

96.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

97.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

98.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

99.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

100.    Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

101.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant.

102.    Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

103.    The calls were to the Plaintiff's cellular phone 0898, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and

receiving text messages. The Plaintiff further has his cell phone registered in his personal name and pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

104.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

105.     Defendants and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least thirteen (13) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without his prior express written consent.

106.     Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

107.     Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

108.     Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

109.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

110.    Defendant's telemarketers/agents called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

111.    Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

112.    Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

113.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

114.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

115.    The foregoing acts and omissions of Defendant and/or their telemarketers constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

116.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

117.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of The Texas Business and Commerce Code 305.053)

118.   Plaintiff incorporates the foregoing allegations as if set forth herein.

119.   The foregoing acts and omissions of Defendant and/or their telemarketers or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

120.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

121.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## COUNT FIVE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

122.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

122.    Defendant's telemarketers/agents made at least thirteen (13) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

123.    As a result of Defendant's telemarketers/agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

124.    As a result of Defendant's agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by the Defendant violates the TCPA and Texas state law;

C.     An injunction enjoining the Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for thirteen (13) calls.

E.     An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for thirteen (13) calls.

F.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for thirteen (13) calls.

H.     An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

I.     An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

J.     Such further relief as the Court deems necessary, just, and proper.

January 3, 2023,                              Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com