**RECEIVED**

March 03, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Javier Martinez_
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

_____

|  |  |  |
|---|---|---|
| **ERIK SALAIZ,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BEYOND FINANCE, LLC,** a California | § | **EP-23-CV-0006-KC** |
| Limited Liability Company | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

_____

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES PLAINTIFF ERIK SALAIZ with his First Amended Complaint and will allege and show as follows:

### PARTIES

1.      Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2.      Defendant BEYOND FINANCE, LLC ("BF" "Defendant") is a limited liability company existing under the laws of California with its principal address at 7322 Southwest Freeway, Suite 1200, Houston, and can be served via its registered agent C T Corporation System at 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

### NATURE OF ACTION

3.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For

1

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4.     Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

5.     As part of marketing their services, Defendant BF hired and authorized their affiliates/telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6.     Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

7.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9.     This Court has personal jurisdiction over the Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.     Under the TCPA, a text message is a call.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23.     Plaintiff successfully registered his personal cell phone (XXX) XXX-0898 on the National Do-Not-Call Registry on August 19, 2021, which was more than 31 days prior to receiving the alleged calls.

24.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25.     Defendant BF offers debt relief services to consumers.

26.     As part of their marketing, Defendant BF hired and contracted a company by the name of American Debt Relief ("ADR") to generate leads for Defendant BF.

27.     ADR works as a telemarketer for Defendant BF.

28.     ADR is an unknown entity at this time however will be revealed during discovery.

29.     With information and belief ADR is an entity based outside of the United States.

30.     ADR makes thousands of unauthorized phone calls to thousands of consumers *en mass* using an automatic telephone dialing system ("ATDS") to solicit Defendant BF's debt relief services in order to generate new leads.

31.     ADR ATDS that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

32.     Defendant BF willfully accepts leads from ADR that generate through illegal telemarketing because these leads benefit Defendant BF financially.

33.     Defendant BF approves and ratifies ADR's behavior for violating the TCPA because it benefits Defendant BF financially.

34.     Defendant BF approves of the contracts with ADR.

35.     Defendant BF authorizes the payments to ADR.

36.     Defendants BF pays ADR out of bank accounts they own and control.

37.     Defendant BF are well aware that the unauthorized phone calls being made on their behalf by ADR soliciting Defendant BF's debt relief services violate the TCPA.

38.     Defendant BF has been sued prior to this lawsuit for violating the TCPA Jones v. Accredited Debt Relief, LLC et al, No. 3:19-cv-02144-GPC-MDD (S.D.CA., Nov. 07, 2019) and continue their illegal behavior because violating the TCPA benefits Defendant BF financially.

39.     Plaintiff received at least thirteen (13) unauthorized phone calls to his personal cell phone 0898 from ADR calling on behalf of Defendant BF soliciting debt relief services within a twelve-month period ("the calls"). *See Exhibit A.*

40.     The calls made to Plaintiff all came from phone number (915) 295-5943.

41.     Plaintiff searched phone number (915) 295-5943 and found it is not registered to ADR or Defendant BF.

42.     From the apparent authority of Defendant BF, ADR spoofed the Caller ID to Plaintiff's local area code (915) to trick Plaintiff into thinking the calls were local.

43.     Defendant BF ratifies ADR's illegal telemarketing behavior because it benefits Defendant BF financially.

44.     The calls ADR made to Plaintiff on behalf of Defendant BF were not made to Plaintiff directly and could have reached anyone in the United States (indicating the call was made using an ATDS).

45.     ADR made at least thirteen harassing calls to Plaintiff calling on behalf of Defendant BF before Plaintiff was able to identify the company ADR was calling on behalf of.

46.     Plaintiff has never had an established business relationship with Defendant BF and never knew who Defendant BF was prior to the calls.

47.     Upon information and belief Plaintiff has received additional calls within the past year from ADR calling on behalf of Defendant BF soliciting debt relief services that are unknown to Plaintiff at this time but will be revealed during discovery.

48.     **Call#13** - Plaintiff received one of multiple calls from ADR calling on behalf of Defendant BF from phone number (915) 295-5943.

49.     Plaintiff answered and was connected to a female telemarketer.

50.     The female telemarketer advised Plaintiff she was calling from "American debt relief."

51.     The female telemarketer advised Plaintiff he was pre-qualified for a debt relief program.

52.     Plaintiff was extremely annoyed and aggravated for continuing to receive calls from telemarketers saying there from "American debt relief" soliciting debt relief services and advised the female telemarketer he was interested in the "debt relief program" for the sole purpose of identifying the company ADR was calling on behalf of.

53.     The female telemarketer collected Plaintiff's credit card debt, personal loan debt, monthly income, and personal information and solicited Plaintiff for debt relief services on behalf of Defendant BF.

54.     The female telemarketer then advised she was going to transfer Plaintiff to her "loan specialist."

55.     Defendant BF instructs ADR to say they are transferring the to a "loan officer" instead of advising the called party they are being transferred to Beyond Finance, LLC in to hide Defendant BF's true identity and duck liability for violating the TCPA.

56.     Plaintiff was then transferred to a representative from Defendant BF named LoJuan Wilson.

57.     The female telemarketer from ADR transferred Plaintiff's information directly to LoJuan

58.     ADR and Defendant BF share a portal database to transfer potential clients of Defendant BF showing formal agency between each other.

59.     LoJuan accepted the call transfer from the female telemarketer confirming that Defendant BF hires and authorizes ADR to make illegal telemarketing calls to consumers soliciting debt relief services on behalf of Defendant BF.

60.     LoJuan advised Plaintiff Defendant BF will consolidate all of Plaintiff's personal debt into one low monthly payment that Plaintiff will make to Defendant BF.

61.     LoJuan confirmed Plaintiff's personal debt amount and solicited Plaintiff for a debt consolidation program on behalf of Defendant BF.

62.     LoJuan advised Plaintiff to stop paying his creditors directly and let Defendant BF take over.

63.     If Plaintiff would have enrolled into the debt consolidation program from Defendant BF, it would benefit Defendant BF financially.

64.     Plaintiff received two emails from Lojuan from lwilson@beyondfinance.com which revealed the true identity of the company responsible for the calls. S*ee Exhibit B.*

65.     Table A below summarizes the phone calls Plaintiff received from ADR on behalf of Defendant BF:

Table A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 04/22/2022 | 2:04 PM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 2 | 05/09/2022 | 4:38 PM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 3 | 05/10/2022 | 11:57 AM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 4 | 05/10/2022 | 01:27 PM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 5 | 05/11/2022 | 12:11 PM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 6 | 05/12/2022 | 11:24 AM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 7 | 05/18/2022 | 9:41 AM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 8 | 05/18/2022 | 1:18 PM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 9 | 05/19/2022 | 11:05 AM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 10 | 05/20/2022 | 11:27 AM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 11 | 07/07/2022 | 11:15 AM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 12 | 08/19/2022 | 09:54 AM | 915-295-5943 | Telemarketer calling from ADR, told them not interested. |
| 13 | 08/19/2022 | 4:49 PM | 915-295-5943 | Telemarketer calling from ADR. Transferred to LoJuan Wilson from BF. LoJuan emailed his information. |

66.     Defendant BF employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

67.     Defendant BF has knowledge of and has adopted and maintained TCPA violations as a sales strategy.

68.      Defendant BF knew full well that ADR is calling and harassing consumers in an attempt to procure business on behalf of the Defendant BF.

69.      Defendant BF willfully accepts these referrals and compensate ADR for their illegal phone calls.

70.     Defendant BF refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant BF financially.

71.     Defendant BF was not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations during calls 1-10 that Plaintiff received from ADR calling on behalf of Defendant BF.  *See Exhibit C.*

72.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") did not contain Defendant BF's registration during the calls 1-10 that Plaintiff received from ADR calling on behalf of Defendant BF.  *See Exhibit C.*

73.     Defendant BF did not qualify for an exemption under § 302.053 during calls 1-10 that Plaintiff received from ADR calling on behalf of Defendant BF.

74.     No emergency necessitated none of the alleged phone calls.

75.     Plaintiff sent an internal do-not-call policy request to Defendant BF to email info@beyondfinance.com on December 31, 2022, which is an email listed on the website they own and control https://www.info@beyondfinance.com.

76.     Defendant BF never sent Plaintiff their internal do-not-call policy.

77.     Upon information and belief, Defendant BF did not train ADR who engaged in telemarketing on behalf of Defendant BF, on the existence and use of Defendant BF's internal do not call policy as ADR failed to recognize Plaintiff's personal cell phone 0898 is registered on the National Do-Not-Call Registry.

78.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT BF

79.     Defendant BF is vicariously liable for the telemarketing calls that generated the lead on their behalf.

80.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

81.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

82.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

83.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

84.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

85.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

86.     To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

87.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

88.     Defendant BF is legally responsible for ensuring that ADR that make telemarketing calls on behalf of Defendant BF comply with the TCPA when so doing.

89.     Defendant BF knowingly and actively accepted business from ADR that originated through illegal telemarketing.

90.     Defendant BF knew (or reasonably should have known) that ADR was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

91.     By hiring a company to make calls on its behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

92.     Moreover, Defendant maintained interim control over the actions of its telemarketers.

93.     For example, Defendant had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

94.     Furthermore, Defendant had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

95.     Defendant also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

96.     Defendants donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched Defendant's debt relief services in the abstract.

97.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

98.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

99.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

100.    ADR transferred customer information, including Plaintiff's contact information, directly to Defendant BF. Thus, ADR had the "ability . . . to enter consumer information into the Defendant BF's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

101.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

102.    Defendant BF is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when ADR solicited Plaintiff for debt relief services on behalf of Defendant BF.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

103.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

104.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

105.    The actions of the Defendant BF violated the Texas Business and Commerce Code 302.101 by authorizing ADR to place solicitation phone calls to a Texas resident on behalf of Defendant BF without having a registration certificate and bond on file with the Texas Secretary of State.

106.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

107.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

108.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

109.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

110.   Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

111.   The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

112.   Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant BF.

113.   The calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

114.   The calls were to the Plaintiff's cellular phone 0898, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name and pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

## COUNT ONE:
## Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing
## Without Prior Express Written Consent

115.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

116.    Defendant BF and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least thirteen (13) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without his prior express written consent.

117.    Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

118.    Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

119.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

### COUNT TWO:
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

120.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

121.    Defendant BF and/or their affiliates or telemarketers called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more

than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

122.    Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

123.    Plaintiff was further statutorily damaged because Defendant BF willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

124.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

### COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

125.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

126.    The foregoing acts and omissions of Defendant BF and/or their affiliates or telemarketers constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a.    A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

    b.    Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

c.   In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

127.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

128.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of The Texas Business and Commerce Code 305.053)

129.    Plaintiff incorporates the foregoing allegations as if set forth herein.

130.    The foregoing acts and omissions of Defendant and/or their affiliates or telemarketers constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendant BF violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

131.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

132.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FIVE

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**

133.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

134.    Defendant BF and/or their affiliates or telemarketers made at least ten (10) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

135.    As a result of Defendant BF and/or their affiliates or telemarketers' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

136.    As a result of Defendant BF and/or their affiliates or telemarketers violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by the Defendant violates the TCPA and Texas state law;

C.    An injunction enjoining the Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for thirteen (13) calls.

E.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for thirteen (13) calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for ten (10) calls.

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for ten (10) calls.

H.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

I.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

J.      Such further relief as the Court deems necessary, just, and proper.

March 2, 2023,                            Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com



# Usage details

WIRELESS ·

04/15/2022 – 05/14/2022

ERIK 915.490.0898

**Display by**

◯ Nicknames      ◯ Numbers

Nickname a number   Manage Nickname

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 04/27/2022 01:39:00 PM | ████████ | INCOMING | SDDV | 4 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 04/22/2022 02:47:28 PM | ▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 04/22/2022 02:04:07 PM | 915.295.5943 | INCOMING | SDDV | 1 |
| 04/22/2022 01:48:40 PM | ▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 04/22/2022 01:23:28 PM | ▓▓▓▓▓ | INCOMING | SDDV | 2 |
| 04/22/2022 01:14:42 PM | ▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 04/22/2022 12:36:23 PM | ▓▓▓▓▓ | INCOMING | SDDV | 2 |
| 04/22/2022 10:51:13 AM | ▓▓▓▓▓ | SANTA ANA | SDDV | 2 |
| 04/22/2022 10:47:11 AM | ▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 04/22/2022 09:33:23 AM | ▓▓▓▓▓ | INCOMING | SDDV | 10 |
| 04/21/2022 04:09:45 PM | ▓▓▓▓▓ | INCOMING | SDDV | 2 |
| 04/21/2022 02:25:01 PM | ▓▓▓▓▓ | INCOMING | SDDV | 12 |
| 04/21/2022 02:21:13 PM | ▓▓▓▓▓ | INCOMING | SDDV | 3 |
| 04/21/2022 12:57:51 PM | ▓▓▓▓▓ | INCOMING | SDDV | 4 |
| 04/21/2022 12:15:08 PM | ▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 04/20/2022 01:37:05 PM | ▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 04/20/2022 12:38:26 PM | ▓▓▓▓▓ | INCOMING | SDDV | 15 |
| 04/20/2022 12:01:13 PM | ▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 04/20/2022 10:05:43 AM | ▓▓▓▓▓ | INCOMING | SDDV | 3 |

Exhibit A



## Usage details

WIRELESS -

04/15/2022 – 05/14/2022

ERIK 915.490.0898

**Display by**

◯ Nicknames    ◯ Numbers

Nickname a number   Manage Nickname

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 05/13/2022 11:06:12 AM | ▬▬▬▬▬ | INCOMING | SDDV | 3 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 05/13/2022 10:10:46 AM | � | INCOMING | SDDV | 1 |
| 05/12/2022 03:26:52 PM | ▬ | PHOENIX | SDDV | 7 |
| 05/12/2022 02:52:04 PM | ▬ | PHOENIX | SDDV | 35 |
| 05/12/2022 01:41:46 PM | ▬ | PHOENIX | SDDV | 27 |
| 05/12/2022 11:24:12 AM | 915.295.5943 | INCOMING | SDDV | 1 |
| 05/12/2022 09:34:26 AM | ▬ | PHOENIX | SDDV | 1 |
| 05/12/2022 09:20:56 AM | ▬ | PHOENIX | SDDV | 1 |
| 05/11/2022 12:12:14 PM | ▬ | INCOMING | SDDV | 1 |
| 05/11/2022 12:11:17 PM | 915.295.5943 | INCOMING | SDDV | 1 |
| 05/11/2022 09:55:24 AM | ▬ | INCOMING | SDDV | 1 |
| 05/11/2022 09:06:42 AM | ▬ | INCOMING | SDDV | 2 |
| 05/10/2022 07:08:15 PM | ▬ | PHOENIX | SDDV | 23 |
| 05/10/2022 06:20:50 PM | ▬ | INCOMING | SDDV | 36 |
| 05/10/2022 04:48:58 PM | ▬ | PHOENIX | SDDV | 13 |
| 05/10/2022 01:27:05 PM | 915.295.5943 | INCOMING | SDDV | 1 |
| 05/10/2022 12:43:58 PM | ▬ | INCOMING | SDDV | 1 |
| 05/10/2022 11:57:29 AM | 915.295.5943 | INCOMING | SDDV | 1 |
| 05/10/2022 10:24:17 AM | ▬ | INCOMING | SDDV | 1 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 05/09/2022 08:16:39 PM | ▬▬▬ | INCOMING | SDDV | 11 |
| 05/09/2022 04:38:37 PM | ☎ 915.295.5943 | INCOMING | SDDV | 1 |
| 05/09/2022 03:17:08 PM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/09/2022 02:17:48 PM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/09/2022 02:10:18 PM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/06/2022 10:04:39 AM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/05/2022 01:31:17 PM | ▬▬▬ | INCOMING | SDDV | 2 |
| 05/05/2022 11:15:58 AM | ▬▬▬ | INCOMING | SDDV | 2 |
| 05/05/2022 09:11:22 AM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/04/2022 11:48:21 AM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/03/2022 03:33:53 PM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/03/2022 02:54:02 PM | ▬▬▬ | INCOMING | SDDV | 9 |
| 05/03/2022 02:34:33 PM | ▬▬▬ | INCOMING | SDDV | 8 |
| 05/03/2022 11:26:22 AM | ▬▬▬ | EL PASO | SDDV | 5 |
| 05/03/2022 10:07:14 AM | ▬▬▬ | INCOMING | SDDV | 4 |
| 05/02/2022 09:54:35 AM | ▬▬▬ | INCOMING | SDDV | 1 |
| 05/02/2022 09:42:31 AM | ▬▬▬ | INCOMING | SDDV | 12 |
| 04/29/2022 05:30:57 PM | ▬▬▬ | INCOMING | SDDV | 2 |

Exhibit A



**‹ Back**

# Usage details

WIRELESS -

05/15/2022 – 06/14/2022

ERIK 915.490.0898

Display by

○ Nicknames    ○ Numbers

Nickname a number    Manage Nickname

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 05/18/2022 09:41:43 AM | 915.295.5943 | INCOMING | SDDV | 1 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 05/18/2022 08:39:33 AM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/17/2022 05:54:56 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/17/2022 04:00:34 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/17/2022 02:32:17 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/17/2022 01:53:28 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 9 |
| 05/17/2022 11:36:48 AM | ▇▇▇▇▇▇ | PHOENIX | SDDV | 11 |
| 05/16/2022 04:41:58 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/16/2022 02:45:14 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/16/2022 12:51:09 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 5 |
| 05/16/2022 10:27:32 AM | ▇▇▇▇▇▇ | INCOMING | SDDV | 3 |

Calls    **99 incoming | 12 outgoing**
Talk time    **339 minutes**

‹ | 1    2    3 | ›

**\*TALK TYPE LEGEND**

The codes shown in this legend are the codes most commonly used with Wireless service from AT&T. Additional codes may be present.

SDDV        Mobile share plan you are currently on

Find a store

Exhibit A



# Usage details

WIRELESS –

05/15/2022 – 06/14/2022

ERIK 915.490.0898

Display by

◯ Nicknames      ◯ Numbers

Nickname a number   Manage Nickname

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 06/02/2022 09:28:35 AM | ▬▬▬▬ | INCOMING | SDDV | 1 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 05/22/2022 10:53:49 AM | ▇▇▇▇▇▇ | EL PASO | SDDV | 1 |
| 05/20/2022 05:02:16 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/20/2022 03:38:56 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/20/2022 03:19:56 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/20/2022 12:04:02 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/20/2022 11:27:15 AM | 915.295.5943 | INCOMING | SDDV | 1 |
| 05/19/2022 04:59:25 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 28 |
| 05/19/2022 04:13:11 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/19/2022 03:33:15 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/19/2022 11:05:37 AM | 915.295.5943 | INCOMING | SDDV | 1 |
| 05/18/2022 03:57:25 PM | ▇▇▇▇▇▇ | INCOMING | SDDV | 1 |
| 05/18/2022 01:18:21 PM | 915.295.5943 | INCOMING | SDDV | 1 |
| 05/18/2022 11:01:46 AM | ▇▇▇▇▇▇ | INCOMING | SDDV | 28 |

Calls   **99 incoming | 12 outgoing**
Talk time   **339 minutes**

‹ | 1   2   3 | ›

**\*TALK TYPE LEGEND**

Exhibit A



‹ Back

# Usage details

WIRELESS -

06/15/2022 – 07/14/2022

ERIK 915.490.0898

Display by

◯ Nicknames      ◯ Numbers

Nickname a number   Manage Nickname

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 07/14/2022 04:07:51 PM | | INCOMING | SDDV | 1 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 07/07/2022 01:43:43 PM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 8 |
| 07/07/2022 01:38:42 PM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 07/07/2022 01:11:29 PM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 2 |
| 07/07/2022 12:32:37 PM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 07/07/2022 11:49:32 AM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 4 |
| 07/07/2022 11:38:20 AM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 07/07/2022 11:18:11 AM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 07/07/2022 11:15:02 AM | 915.295.5943 | INCOMING | SDDV | 1 |
| 07/07/2022 10:17:25 AM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 07/07/2022 09:57:08 AM | ▓▓▓▓▓▓▓ | CALL WAIT | SDDV | 1 |
| 07/07/2022 09:55:48 AM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 2 |
| 07/07/2022 08:40:53 AM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 1 |
| 07/06/2022 05:46:25 PM | ▓▓▓▓▓▓▓ | INCOMING | SDDV | 5 |

Calls   **164 incoming | 10 outgoing**
Talk time   **319 minutes**

‹ | 1    2    3    4 | ›

**\*TALK TYPE LEGEND**

Exhibit A



‹ Back

# Usage details

WIRELESS –

08/15/2022 – Present

ERIK 915.490.0898

Display by

◯ Nicknames          ◯ Numbers

**Nickname a number   Manage Nickname**

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 08/22/2022 11:56:15 AM | ▬▬▬▬ | INCOMING | DT | 1 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 08/22/2022 11:48:53 AM | ███████ | INCOMING | DT | 1 |
| 08/22/2022 10:29:19 AM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 04:49:30 PM | ☏ 915.295.5943 | INCOMING | DT | 23 |
| 08/19/2022 03:07:17 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 02:49:46 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 02:37:13 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 02:25:47 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 02:14:51 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 01:27:53 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 01:05:03 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 12:59:09 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 12:46:30 PM | ███████ | DAYTONABCH | DT | 2 |
| 08/19/2022 12:38:38 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 12:22:28 PM | ███████ | INCOMING | DT | 5 |
| 08/19/2022 12:17:10 PM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 11:52:04 AM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 11:19:33 AM | ███████ | INCOMING | DT | 1 |
| 08/19/2022 11:01:29 AM | ███████ | INCOMING | DT | 1 |

Exhibit A

| DATE & TIME | CONTACT | LOCATION | TYPE | MINUTES |
|---|---|---|---|---|
| 08/19/2022 10:38:01 AM | ████████ | CALL WAIT | CW | 1 |
| 08/19/2022 10:37:51 AM | ████████ | INCOMING | DT | 1 |
| 08/19/2022 10:35:17 AM | ████████ | INCOMING | DT | 1 |
| 08/19/2022 09:54:09 AM | 915.295.5943 | INCOMING | DT | 1 |
| 08/19/2022 08:52:44 AM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 05:49:19 PM | ████████ | INCOMING | DT | 2 |
| 08/18/2022 05:13:26 PM | ████████ | INCOMING | DT | 2 |
| 08/18/2022 05:12:54 PM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 03:50:12 PM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 03:28:08 PM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 03:23:52 PM | ████████ | INCOMING | DT | 4 |
| 08/18/2022 03:14:03 PM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 02:24:26 PM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 01:35:05 PM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 01:11:43 PM | ████████ | INCOMING | DT | 1 |
| 08/18/2022 01:06:04 PM | ████████ | INCOMING | DT | 5 |
| 08/18/2022 12:42:22 PM | ████████ | INCOMING | DT | 12 |
| 08/18/2022 12:34:11 PM | ████████ | INCOMING | DT | 3 |

Exhibit A

 Gmail

**Erik Salaiz <salaiz.ep@gmail.com>**

---

**(no subject)**
1 message

---

**Lojuan Wilson <lwilson@beyondfinance.com>**
To: Salaiz.ep@gmail.com

Fri, Aug 19, 2022 at 4:58 PM

---

--

*LoJuan Wilson*

*Certified Debt Specialist*

**Accredited Debt Relief  |  Beyond Finance**

**Direct: = 877-230-7106|  Personal Fax: (619) 752-1780**

lwilson@beyondfinance.com | www.BeyondFinance.com



   

- **Read our Testimonials:** *CLICK HERE*
- **See our Proven Results:** *CLICK HERE*

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute, or copy this email. Please notify the sender immediately if you have received this email by mistake and delete this email from your system. Finally, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

Exhibit B

 Gmail

**Erik Salaiz <salaiz.ep@gmail.com>**

---

### Our Proven Results & Important Information

1 message

**Lojuan Wilson <lwilson@beyondfinance.com>**                    Fri, Aug 19, 2022 at 4:59 PM
To: Eric Salaiz <salaiz.ep@gmail.com>
Cc: Lojuan Wilson <lwilson@beyondfinance.com>

   

Hi Eric,

Please take some time to review our testimonials & proven results so you can see all
the great things we're doing for our clients. I've also included a few links so you can
review our company accreditations with the Better Business Bureau and TrustPilot. We
hope to earn your trust today just as we have with over 140K of our clients.

Reach out to me anytime at lwilson@beyondfinance.com or to continue the
conversation. You can also click here to have the next available agent call you back
now.

## Testimonials & Proven Results

<div style="border:1px solid #ccc">Check Our Reviews</div>

<div style="border:1px solid #ccc">See Client Results</div>

---

## Our Accreditations

**Excellent** ★★★★★ based on **4,316** reviews ★ Trustpilot



Exhibit B

Gmail - Our Proven Results & Important Information

## **Important Information and Disclosures**

E-Sign Consent: ADR and its affiliates conduct business electronically. In order to process an application or conduct business electronically with you, you are required to consent to conduct business electronically with us pursuant to the following consents for electronic communications:

Beyond Finance: E-Sign Consent
Above Lending: E-Sign Act Disclosure
NY Residents Only: See NY Disclosures - Use and Rights to Consumer Credit Reports

 

This advertisement was sent to salaiz.ep@gmail.com by lwilson@beyondfinance.com
Accredited Debt Relief
7322 Southwest Freeway, Suite 1200 Houston, TX 77074
(855) 461-5240

To stop receiving emails from Accredited Debt Relief, you can click here Unsubscribe.

Privacy Policy

Accredited Debt Relief is a DBA of Beyond Finance, LLC. We provide debt consolidation services. Our clients who make all monthly program payments pay approximately 55% of their enrolled debt upon successful program completion, before program fees. Fees are based on a percentage of your enrolled debt at the time of starting the program and range from 15%-25% of your enrolled debt. Programs range from 12-48 months. On average, clients must save approximately 40%-50% of each debt due to an enrolled creditor before a bona fide settlement offer will be made. On average, clients receive their first settlement within 4-6 months of enrollment and approximately every 3-6 months thereafter from when the prior debt was settled. Not all Clients complete the program. Estimates are based on prior results and may not match your results. We cannot guarantee that your debts will be resolved for a specific amount or percentage or within a specific timeframe. We do not assume your debts, make monthly payments to creditors or provide tax, bankruptcy, accounting, legal advice or credit repair services. Program is not available in all states; fees may vary by state. The use of debt consolidation services will likely adversely affect your credit. You may be subject to collections or lawsuits by creditors or collectors. Your outstanding debt may increase from the accrual of fees and interest. Clients may withdraw from the program at any time without penalty and receive all funds from their dedicated account, other than funds earned by the company or fees paid to third-party service providers, as may be applicable. Read and understand all program materials prior to enrolling. Certain types of debts are not eligible for enrollment. Some creditors are not eligible for enrollment because they do not negotiate with debt consolidation companies.

Unsubscribe .

Exhibit B



**Telephone Solicitors Search**

Unless a seller qualifies for an exemption, §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

This site has search capabilities that allow searches to be made for telephone solicitors who have registered with the Office of the Secretary of State. All fields displayed are searchable.

To obtain information or report an alleged violation concerning telephone solicitors please dial the toll-free Solicitation Information Hotline: 1(800) 648-9642.

File Number

Status

Received Date      Registration Date   Expired Date        Response Date

Seller Name

Beyond Finance

DBA

Address

City

State                          Zip Code              Phone Number

Contact First Name                            Last Name

Surety                                        Surety Type

Security Number         Security Expires

Items for Sale

Report Date          Report Date Received

Exhibit C

**Found:** 2 **Displayed:** 2

| Seller Name: **Beyond Finance, LLC** | # 1 |
| --- | --- |

| DBA: | **Beyond Holdings, Inc.; Beyond** |
| --- | --- |
| Mailing Address: | **7322 Southwest Freeway, 14th Floor Houston , TX 77040 USA** |
| Phone: | |
| Contact: | **Pres. Larry B.  Litton, Jr.** |
| File Number: | **20180001** |
| Status: | **Closed** |
| Date Registered: | **1/29/2020** |
| Date Expired: | **1/29/2021** |
| Surety: | **Hartford Casualty Insurance Company** |
| Surety Type: | **Bond** |
| Security Number: | **21BSBHV3142** |
| Security Expires: | |
| Items For Sale: | **Debt Management** |

| Seller Name: **Beyond Finance, LLC** | # 2 |
| --- | --- |

| DBA: | **Accredit Debt Relief, LLC** |
| --- | --- |
| Mailing Address: | **7322 Southwest Freeway, Suite 1200 Houston, TX 77074 USA** |
| Phone: | **(619) 618-1122** |
| Contact: | **Mr. Hurshell  Brown** |
| File Number: | **20180005** |
| Status: | **Renewal Registration** |
| Date Registered: | **6/1/2022** |
| Date Expired: | **6/1/2023** |
| Surety: | **Argonaut Insurance Company** |
| Surety Type: | **Bond** |
| Security Number: | **SUR0073611** |

Exhibit C

Security Expires:

Items For Sale:   **Credit Repair**

---

Instructions:
- There is no fee for this service.
- Wildcard searches are permitted for name. Example: Name: **ABC%**
- Addresses provided were current on the date the entity was registered. The address provided may no longer be valid if the status is closed.

Exhibit C